# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY L. REED, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-18-275-RAW-SPS |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social ) | |
| Security Administration, [1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Jeffrey L. Reed requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-six years old at the time of the administrative hearing (Tr. 49). He has a high school education and has worked as a forklift operator, utility line worker, parts salesperson, and mechanic (Tr. 49, 257). The claimant alleges that he has been unable to work since November 25, 2014, due to a hernia, acid reflux, ulcerative colitis, left thumb nerve impingement, irritable bowel syndrome, high blood pressure, high cholesterol, and asthma (Tr. 255-56).[3]

### Procedural History

In September 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 213-16). His application was denied. ALJ Edward L. Thompson conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 3, 2017 (Tr. 24-36). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform medium work as defined in 20 C.F.R. § 404.1567(c) (Tr. 30-

---

[3] The ALJ found that the claimant was engaged in substantial gainful activity through June 30, 2015 (Tr. 27).

35).  The ALJ then concluded that the claimant was not disabled pursuant to Rule 203.14 of the Medical-Vocational Rules (the "grids") (Tr. 35-36).  *See* 20 C.F.R. Part 404, Subpt. P, App. 2 § 203.14.

## Review

The claimant's sole contention of error is that the ALJ erred in evaluating his subjective complaints.  The undersigned Magistrate Judge finds this contention unpersuasive for the following reasons.

The ALJ found the claimant's gastrointestinal system disorder and hernia were severe impairments, but that his status post carpal tunnel release surgery, chronic pulmonary obstructive disease ("COPD"), depression, and anxiety were non-severe (Tr. 27-28).  The relevant medical evidence reveals that Dr. Charles Funderburk performed a carpal tunnel release and ulnar nerve release on the claimant's right arm in November 2014 (Tr. 362).  Dr. Funderburk noted the claimant was doing extremely well at follow-up appointments and released him to return to work in January 2015 with the restrictions of "no handheld impact tools, no barrel handling."  (Tr. 359-60, 654).  At a follow-up appointment in February 2015, the claimant reported numbness in two of his left fingers (Tr. 357).  Dr. Funderburk indicated the claimant did not have "a lot" of carpal tunnel symptomology on the left and recommended a left ulnar nerve release surgery (Tr. 357-58).  There are no further treatment notes from Dr. Funderburk in the record.

In June 2015, the claimant presented to Dr. Philip Bird, a gastroenterologist, and reported diarrhea that began in November as well as rectal bleeding, abdominal pain, and a sore throat (Tr. 467-70).  Lab test results revealed the presence of clostridium difficile

-4-

toxin B gene sequences in the claimant's stool (Tr. 465, 475). By August 2015, the claimant's diarrhea and rectal bleeding had resolved, but his acid reflux persisted (Tr. 475). Dr. Bird diagnosed the claimant with clostridium difficile colitis (status post treatment with Flagyl, improved), esophagitis (reflux), esophageal reflux (continues to persist), hiatal hernia, gastritis (mild, chronic, inactive), ulcerative colitis, and diarrhea (resolved) (Tr. 475-78).

On December 21, 2015, State agency physician Dr. Suzanne Roberts completed an RFC assessment and found the claimant could perform the full range of medium work (Tr. 105-07). Dr. Roberts' findings were affirmed on review (Tr. 102-04).

The claimant established care with Dr. Anas Alsadi, a pulmonologist, on February 3, 2016, for increasing shortness of breath, constant wheezing, and chronic cough (Tr. 1176-79). Dr. Alsadi prescribed bronchodilator medications and nebulizer treatments and referred the claimant for a pulmonary function study, the results of which revealed minimal obstructive airways disease, moderately severe diffusion defect, and moderately severe neuromuscular disease (Tr. 1126-30, 1179). By July 2016, the claimant was no longer wheezing, and he reported his medications were "really helping." (Tr. 1260-1265). Spirometry testing conducted the same month revealed mild air flow obstruction and Dr. Alsadi noted the claimant had no symptoms suggesting declining lung function (Tr. 1264). He diagnosed the claimant with, *inter alia*, mild COPD (Tr. 1265).

On March 25, 2016, Dr. Brittany Schultz completed a consultative physical examination of the claimant (Tr. 342-51). She found the claimant had normal breath sounds, normal muscle strength in all extremities, and full range of motion (Tr. 347-51).

Dr. Schultz noted that the claimant's grip strength was 5/5 bilaterally and opined that he could manipulate small objects and effectively grasp tools such as a hammer (Tr. 347, 350). A chest x-ray taken the same day was normal (Tr. 345). A pulmonary function study conducted the same day revealed moderate obstruction but indicated that the results should be interpreted with care because only one acceptable maneuver was obtained (Tr. 342-44). Dr. Schultz assessed the claimant with colitis, asthma/emphysema/COPD, carpal tunnel, hypertension, hyperlipidemia, hiatal hernia, and acid reflux (Tr. 347).

At the administrative hearing, the claimant testified that he was unable to work due to carpal tunnel syndrome, mental problems, arthritis, ulcerative colitis, hiatal hernia, and stomach problems (Tr. 51). He stated that he experiences pain and numbness in both hands, has difficulty picking up round items, and last saw Dr. Funderburk three years earlier (Tr. 52-53, 55, 58). The claimant also indicated that he was unable to control his bowels due to his ulcerative colitis and has experienced some accidents but does not wear adult incontinence briefs (Tr. 53-54). As to specific limitations, the claimant stated he could stand for thirty minutes at a time for a total of three and one-half hours or four hours per day before his knees give out, could walk 100 yards before running out of breath, could lift ten pounds before experiencing pain, and had no difficulty sitting (Tr. 58-59, 71).

The claimant contends that the ALJ erred in analyzing his subjective statements by improperly relying on the objective medical evidence and his continued smoking to discount such statements. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[4] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[5] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and

---

[4] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[5] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

(vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. In discussing the claimant's subjective symptoms, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (Tr. 35). In making such conclusion, the ALJ noted several inconsistencies between the claimant's subjective statements and the medical and other evidence of record, including: (i) Dr. Funderburk's treatment notes showing the claimant's carpal tunnel syndrome resolved on the right and was asymptomatic on the left, (ii) the claimant's ability to work beyond his alleged onset date, (iii) Dr. Schultz's normal consultative examination, (iv) Dr. Bird's treatment notes showing the claimant's gastrointestinal symptoms resolved with medication by August 2015, (v) March and June 2016 spirometry testing within normal limits, (vi) Dr. Alsadi's characterization of the claimant's pulmonary obstruction as "mild," (vi) the claimant's continued smoking, and

(vii) the claimant's own report that he could have worked after his short-term disability ended (Tr. 31). Thus, the ALJ linked his subjective statement analysis to the evidence and provided specific reasons for the determination. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation of the claimant's subjective statements is therefore entitled to deference. *See Casias*, 933 F.2d at 801. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 26th day of February, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**